IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to: | ) | No. 35728-7-III |
| | ) | |
| G.R.J.S. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

PENNELL, A.C.J. — K.T. appeals a trial court order terminating her parental rights to her youngest child, G.R.J.S. We affirm.

FACTS

G.R.J.S. was removed from K.T.'s home on March 13, 2015, due to concerns regarding neglect and possible drug use by K.T. and G.R.J.S.'s father.[1] A dependency petition was filed three days later in Benton County Superior Court. At the time of the onset of dependency, G.R.J.S. was a few months shy of his second birthday.

---

[1] G.R.J.S.'s father has agreed to termination of his parental rights and is not a party to this appeal.

Dependency proceedings regarding G.R.J.S. lasted for over two years. K.T.'s parental deficiencies were identified as: lack of parenting skills, inability to provide a safe and stable home, and substance abuse issues. The court ordered K.T. to engage in the following services: (1) complete a parenting assessment and follow the counselor's recommendations, (2) engage in mental health counseling at Catholic Family and Child Services, and follow the counselor's recommendations, (3) submit random urinalysis samples at an approved provider, and (4) complete a substance abuse assessment and any other recommended treatments.

The Department of Social and Health Services worked to ensure the court-ordered services were both available and accessible to K.T. It provided her with bus passes. It maintained regular communication with K.T. about the court-ordered services. K.T. was advised about the services orally and in writing.

Although K.T. started some of her court-ordered services, she neither participated regularly nor completed any of those services. K.T. completed a parenting assessment, but failed to follow up with recommended services. She began mental health counseling at Catholic Family and Child Services, but her counselor closed her file after six months due to K.T.'s lack of participation. K.T. never submitted a single urinalysis sample to the Department's contracted provider. She participated in two substance abuse evaluations

and she attended some outpatient treatment sessions, but eventually dropped out of these programs as well.

Not only did K.T. fail to engage in services, she was also inconsistent in her visits with G.R.J.S. K.T. missed numerous visits. When she did show up, she would sometimes fall asleep. Service providers noted that K.T.'s lack of consistency caused G.R.J.S. to be anxious and distressed.

A termination trial was held during October 2017. K.T. testified and attempted to explain her noncompliance. She claimed that her depression interfered with her ability to complete court-ordered services. She explained that she did not have a driver's license and has trouble using the buses to get to appointments. K.T. opined that inpatient treatment would better help her overcome these barriers and obtain treatment.

Testimony elicited from the Department refuted K.T.'s explanations. According to the Department's witnesses, K.T. had been provided a bus pass throughout the dependency and had never indicated she had trouble using the bus. The Department's witnesses explained that inpatient placement requires an assessment of a higher level of need than had been determined for K.T. A client's transportation problems or desire for inpatient treatment is insufficient to justify a referral for inpatient services. The Department's witnesses also testified that K.T.'s lack of follow-through prevented it

from exploring whether a different level of service, such as integrated mental health and

substance abuse services, would have been appropriate.[2]

The trial court terminated K.T.'s parental rights to G.R.J.S. on November 15,

2017.  K.T. now timely appeals that decision.

ANALYSIS

Judicial termination of parental rights is a two-step process.  The first step focuses

on the parental fitness.  Under this step, the Department must show parental unfitness

by clear, cogent, and convincing evidence, including proof of the statutory factors set

forth in RCW 13.34.180(1).  RCW 13.34.190(1)(a)(i); *In re Parental Rights to K.M.M.*,

186 Wn.2d 466, 478, 379 P.3d 75 (2016).  If this initial burden is met, the second step

focuses on the child and assesses whether the preponderance of the evidence shows

that termination would be in the child's best interests.  RCW 13.34.190(1)(b); *K.M.M.*,

186 Wn.2d at  479.

---

[2] For example, chemical dependency professional Christine Bartlett of First Step Community Counseling Services testified that she had recommended to K.T. that she obtain a mental health evaluation from Lourdes Counseling Center.  An evaluation from Lourdes might have provided insight as to whether K.T. would have benefited from its integrated mental health/chemical dependency program.  However, K.T. never signed a release authorizing the sharing of information between First Step and Lourdes.  Without a signed release, Ms. Bartlett was unable to assist K.T. with getting an evaluation by Lourdes for its program.  1 Report of Proceedings (Oct. 18, 2017) at 124-26.

Our review of a trial court's termination decision is highly deferential. *K.M.M.*, 186 Wn.2d at 477. A trial court's factual findings will not be disturbed unless "'clear, cogent, and convincing evidence does not exist in the record.'" *Id.* (quoting *In re Dependency of K.R.*, 128 Wn.2d 129, 144, 904 P.2d 1132 (1995)).

K.T.'s appeal focuses on the adequacy of the Department's proof as to three aspects of the applicable statutory factors: (1) provision of necessary services, as required by RCW 13.34.180(1)(d), (2) understandable provision of services, as required by RCW 13.34.180(1)(d), and (3) little likelihood of remedying parental deficiencies, as required by RCW 13.34.180(1)(e). Our discussion of K.T.'s factual contentions is organized according to these three statutory requirements.

*Provision of necessary services—RCW 13.34.180(1)(d)*

K.T. challenges the trial court's finding that the Department provided necessary services as required by RCW 13.34.180(1)(d). She claims the Department should have offered her a psychological evaluation and dual diagnosis or integrated mental health/substance abuse treatment in an inpatient setting. The record fails to support these contentions.

Although there was some testimony at trial that K.T. might have benefited from a psychological evaluation, there was never any definitive recommendation for an

evaluation or any suggestion that K.T. required special accommodation in order to be successful at the court-ordered services. K.T.'s case thus contrasts with our decision in *In re Parental Rights to I.M.-M.*, 196 Wn. App. 914, 385 P.3d 268 (2016). There, we reversed a termination order based on the Department's failure to provide services in accordance with a parent's documented cognitive impairment. *I.M.-M.*, 196 Wn. App. at 923-24.

The record also fails to show K.T. required integrated mental health/substance abuse counseling services. The evidence was undisputed that K.T. received simultaneous substance abuse and mental health services. Her case differs from *In re Welfare of S.J.*, 162 Wn. App. 873, 256 P.3d 470 (2011). In *S.J.*, the Department erroneously took a sequential approach toward the provision of services, and then attempted to terminate the parent's rights based on problems caused by the Department's failed protocol. 162 Wn. App. at 881-82. There was no evidence that K.T. would have had a better chance at succeeding in court-ordered services had her mental health and drug counseling been provided by one organization, instead of two. K.T.'s argument to the contrary is purely speculative. It is not a basis for reversing a trial court's termination decision.

*Understandable provision of services—RCW 13.34.180(1)(d)*

Apart from challenging the provision of necessary services, K.T. also claims the trial court erroneously determined that services were offered in an understandable manner. K.T. points out that she is a "concrete thinker," meaning that she cannot comprehend competing instructions. Br. of Appellant at 7, 17. In addition, K.T. claims that she was evicted during the course of the dependency, which interfered with her ability to receive mail.

K.T.'s claims of confusion and miscommunication are not supported by the record. There was some evidence that K.T. had been sent mixed messages about whether she was required to participate in substance abuse treatment. However, the bulk of the testimony showed that this requirement was clarified by K.T.'s social worker and the guardian ad litem. The record also shows that the trial court reaffirmed the necessity of the treatment at K.T.'s various review hearings. In addition, although there were times that K.T.'s address was unknown to her service providers, the undisputed testimony shows that K.T.'s social worker maintained monthly contact with K.T. and repeatedly reminded her of her court-ordered obligations.

Even by her own testimony, K.T. admitted that she understood the expectation to follow through with the court's orders and knew that she had not been fully engaged

in services. 1 Report of Proceedings (Oct. 18, 2017) at 64-65. Clear, cogent, and convincing evidence supports the trial court's determination that the Department understandably offered K.T. services, as required by RCW 13.34.180(1)(d).

*Little likelihood of remedying parental deficiencies—RCW 13.34.180(1)(e)*

K.T. argues the record does not support a finding that there is little likelihood her parental deficiencies would be remedied in the near future, as required by RCW 13.34.180(1)(e). According to K.T., the obstacles to reunification with G.R.J.S. could have been overcome if she had been provided sufficient services.

As previously noted, that claim is not supported by the record. The problem for K.T. was not that she failed to progress in prescribed services, but that she did not participate. There is ample evidence that K.T. was not so disabled that she was incapable of arranging for transportation when she deemed it a priority. For example, K.T. testified that she was able to care for her older children by taking them to the park and to the fair. She was also able to provide them food, shelter, and medical care. Nothing in the record suggests that K.T. required special accommodation beyond a bus pass in order to reach her service appointments and visitation sessions with G.R.J.S.

The evidence in the record supports the trial court's finding that K.T. repeatedly demonstrated an unwillingness to commit to services and to take the steps necessary for

G.R.J.S. to return to her care. If K.T. had shown success or persistence in at least one of the service areas ordered by the court, there may have been reason to give her more time or to explore other options. But as K.T. herself admitted, she repeatedly declined to avail herself of any of the offered services. The trial court was not required to accept K.T.'s day-of-trial assurances that things would be different this time. Instead, the trial court was justified in concluding that K.T. was unlikely to remedy her parental deficiencies in the near future.

## CONCLUSION

The order terminating parental rights is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Fearing, J.